UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

MARIE CODY,                        )
                                   )
    Plaintiff,              )
                                   )
v.                                 )  Case No. CV614-087
                                   )
CAROLYN W. COLVIN,                 )
*Acting Commissioner of Social*    )
*Security*,                        )
                                   )
    Defendant.              )

## ORDER

Marie Cody appeals the Social Security Commissioner's denial of her application for Supplemental Security Income (SSI) benefits. Doc. 1.[1] She has exhausted her administrative remedies so her claims are now ripe for judicial review.

## I. GOVERNING STANDARDS

In social security cases, courts:

> review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate

---

[1] All documents referenced here have been "E-filed." The Court is thus using the electronic pagination placed on the top of each page by the Court's CM/ECF software. It may not line up with pagination on the original, printed page of each document.

to support a conclusion." Id. (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In response to the showing the claimant makes, the ALJ applies

a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the [Residual Functional Capacity (RFC)] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience.[2] *Id.* § 404.1520(a)(4)(v). An ALJ may make this

---

[2] RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In

2

determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a VE. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

## II. BACKGROUND

This case turns on Cody's characterization of herself as intellectually disabled (or mentally retarded, the term previously used), and her contention that, when this is combined with her physical limitations, she meets what is known as "Listing 12.05C," an SSA disability standard further explained below. Doc. 12 at 5; *see also* doc. 10-2 at 75 (counsel urging the ALJ to find that she "has a IQ less than 70 plus other significant medical problems"). At her administrative hearing (she was then 41 when she applied for SSI, and 43 at the hearing, doc. 10-2 at 30, 43), Cody testified that she "went through 12 grades of school," but they were all "special education classes," with no vocational training. *Id.* at 44, 63, 64. In 1995 she worked for "[a]bout six months" at a Burger King ("Cook,

---

relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 2015 WL 859830 at * 4 (11th Cir. Mar. 2, 2015) (quotes and cite omitted).

3

flipping hamburgers"), *id.* at 45, injured her left shoulder from a fall there, *id.* at 59, then tried other work. *Id.* at 46-47. The ALJ ultimately found that she "has not engaged in substantial gainful activity since July 27, 2010, the [date she applied for SSI]." *Id.* at 24; *see also id.* at 48. Hence, she made it through step two of the five-step sequential process.

Cody weighs 239 pounds and uses a cane. *Id.* at 49. She suffers from poor circulation and one leg is about one inch shorter than the other. *Id.* at 49-50. The ALJ explored her other limitations, too, and noted that she is assisted in things like housework and grocery shopping by her boyfriend of 21 years. *Id.* at 50-54. She can read and write "a little bit" and has a driver's license. *Id.* at 56. She tries to read the Bible. *Id.* at 57. She also suffers from dizziness caused by her fluctuating blood pressure. *Id.* at 58. Her cane helps her in that regard. *Id.*

Cody cannot shower or take baths (she resorts to "sponge baths") because "I can't set in the tub long enough to take a shower if I want my back to be hurt [sic]." Doc. 10-2 at 59-60. She says she spends "all day" in bed, does not go to "any church, civic or social activities" and

has been inactive like that "[e]ver since I was grown up." *Id.* at 60. She does, however, visit with her parents "[a]bout every three days." *Id.* Her boyfriend takes her, as she has not driven a car since high school. *Id.* at 60-61. He also prepares her meals and cuts her hair. *Id.* at 61.

The ALJ found that Cody has severe impairments: congenital deformity of the right lower extremity exacerbated by morbid obesity and borderline intellectual functioning. Doc. 10-2 at 24. Nevertheless (step three) she met no listed impairments and (step four) he determined that she has the residual functional capacity (RFC) to

> perform[] light exertional work activities that never require climbing ladders, ropes, or scaffolding. She can individually sit, stand, walk, push and/or pull for at least six of eight hours each eight-hour workday. She can lift/carry 20 pounds occasionally (up to 1/3 of an eight-hour workday) and 10 pounds frequently (up to 2/3 of an eight-hour workday). She can individually climb ramps/stairs, balance, stoop, kneel, crouch, operate leg/foot controls with her right lower extremity, and crawl for no more than 1/3 of an eight-hour workday. She should avoid even moderate exposure to hazardous work environments where a lack of mobility and exposure to heights may endanger her[] or others. [Plaintiff's] borderline intellectual functioning limits her to performing work activities with a specific vocational preparation of 1-3. She should avoid constantly changing or fluid work environments. She should not be required set independent

5

work goals.

Doc. 10-2 at 27.

The ALJ explained that he had considered all of her symptoms as claimed, to the extent they can reasonably be accepted as consistent with the objective medical and other evidence before him. *Id.* He acknowledged the multi-step process as required by Social Security regulations. *Id.* He also detailed why she failed to meet the Listing 12.05, ¶¶ A-D mental impairment requirements for a disability finding. *Id.* at 24-25. He evaluated her testimony and made credibility determinations based on the medical evidence as well as what he perceived to be her inconsistent statements as to why she stopped working, her activities, and so forth. *Id.* at 27-30.

Cody, the ALJ concluded, is exaggerating her incapacities, and he specifically rejected the "congenital deformity" findings (of her leg) by Dr. Kevin Brown, upon whom she now relies in this appeal, because, *inter alia*, Dr. Brown "repeatedly confused [her] left leg and her right leg during the examination. . . ." *Id.* at 30. The ALJ consulted a vocational expert (VE), who opined that, given her limitations, she would be able to perform available jobs in the national

economy with a Specific Vocational Preparation (SVP) of 2, light exertional level, such as cafeteria attendant or a bakery worker. *Id.* at 69-70. Because Cody was able to perform jobs available in significant numbers in the economy, the ALJ ruled that she is not disabled. *Id.* at 31-32.

## III. ANALYSIS

Citing her low IQ, minimal work history, congenital right leg deformity, two motor vehicle accidents (2008 & 2011) and resulting degenerative changes from one of them, plus 2010 physical and psychological evaluations, Cody insists that the ALJ failed to properly analyze those medical opinions and erred in finding that she failed to meet Listing 12.05C. Doc. 12. The Commissioner insists that substantial evidence supports the ALJ's decision and that he committed no such error. Doc. 13.

To meet her burden of proving disability, Cody more or less placed almost all of her eggs in the Listing 12.05 presumptive disability basket:

> To establish presumptive disability under section 12.05(C), a claimant must present evidence of "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental

7

impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(C). In addition, while the plaintiff must "also satisfy the 'diagnostic description' of mental retardation in Listing 12.05[,]"23 *Cooper v. Commissioner of Soc. Sec.*, 217 Fed. App'x 450, 452 (6th Cir.2007) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir.2001)), the law in this Circuit is clear that where, as here, a claimant has presented a valid IQ score of 60 to 70, she is entitled to the presumption that she manifested deficits in adaptive functioning before the age of 22, *see Hodges v. Barnhart*, 276 F.3d 1265, 1266, 1268–1269 (11th Cir.2001).

*Hartman v. Colvin*, 2014 WL 3058550 at *2 (S.D. Ala. July 7, 2014).

But that "presumption is rebuttable, [though] the Commissioner is charged with the task of determining whether there is sufficient evidence (relating to plaintiff's daily life) to rebut the presumption. *See Grant v. Astrue*, 255 Fed. App'x 374, 375 (11th Cir. 2007) (per curiam)." *Id.* And even a valid IQ score is not necessarily conclusive of mental retardation where it is inconsistent with other evidence of claimant's daily activities. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992); *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) (rejecting a claim of § 12.05(C) mental retardation, where the claimant's 69 I.Q. score was inconsistent with evidence that he had a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs

8

such as an administrative clerk, statistical clerk, and an algebra teacher).[3]

Here Cody has failed to meet that bottom line and thus satisfy the presumption. In fact, she presented *no* valid IQ score. Consultative examiner Dr. Kristiansson Roth (a licensed psychologist, doc. 10-7 at 72) noted low intellectuality scores ("Full Scale IQ 57," *id.* at 71), but the ALJ read Roth's report as concluding that they underestimated her actual cognitive ability -- Cody's own nervousness during her evaluation in fact may have made it difficult for her to concentrate and thus adversely affect her testing/score. *Id.* ("Results if [IQ] testing under estimate [sic] the Claimant's potential to a mild degree. Claimant's performance was influenced by lack of motivation due to be nervous [sic] during the testing session, she reported having a difficult time focusing and concentrating.").[4] At most Roth

---

[3] *See also Grant v. Astrue*, 255 F. App'x 374, 375 (11th Cir. 2007) ("The mental retardation Impairment Listing in § 12.05C requires the claimant to demonstrate a 'significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22,' as well as a 'valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.'") (quoting §§ 12.00A, 12.05, 12.05(C)).

[4] However, Dr. Roth also wrote: "Claimant appeared to be a reliable informant.

9

diagnosed a "reading disorder," not intellectual disability or even borderline intellectual functioning. Among other facts that impressed the ALJ: Cody was functioning enough to get a driver's license, could read the Bible, and "has worked unskilled jobs at levels indicative of substantial gainful activity in the past, and demonstrated no memory, concentration, or attention deficits during the consultative psychological examination." Doc. 10-2 at 29-30; *see also id.* at 29 (she can spell "WORLD" forwards and backwards, has intact concentration, short-term retention, recent memory, and remote memory.").[5]

The ALJ also properly considered, and rejected, the opinion of

---

She seemed honest and forthright. Her descriptions of her problems appear consistent with clinical presentation and her records. She did not appear to exaggerate, promote or embellish her symptomology. She responded positively when redirected and was able to carry out the testing instructions. Medication or visual/auditory problems did not interfere with optimal performance." *Id.* at 71-72. The ALJ was authorized to weigh these somewhat competing observations in making his finding and arriving at his legal conclusions. As noted *supra*, Part I, this Court cannot reweigh the evidence but only ensure that substantial evidence supports the ALJ's ruling.

[5] It bears repeating here that, while the Court might weigh the evidence differently and come up with the opposite result, re-weighing is *not* the judicial review standard. Again, "[i]f the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Mitchell*, 771 F.3d at 782 (quotes and cite omitted).

consultative examiner Dr. Kevin Brown.[6] Doc. 10-2 at 30 ("Although Dr. Brown examined the claimant in person, he repeatedly confused [her] left leg and right leg during the examination and attributed right leg pathologies to the left leg, and furthermore stated the claimant had a 2/5 strength in the right leg, which contradicts his finding[7] that the claimant was able to walk and the evidence elsewhere in the record that the claimant is able to walk without an assistive device."); *see also id.* (noting that Brown's opinion that she cannot shop "is inconsistent with the claimant's admission that she played basketball during her alleged periods of disability"). An ALJ, for that matter, is

---

[6] ALJs must hew to established deference levels when presented with opinions from health professionals:

> "Generally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006). Non-examining, consultative physicians are due the least weight, though the regulations still require that the ALJ consider their opinions and determine that weight based upon their consistency with the evidence of record. 20 C.F.R. § 404.1527(f); *see also Tapley v. Colvin*, 2015 WL 764022 at * 3 (S.D.Ga. Feb.23, 2015) ("As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record.") (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir.2004)).

*Conley v. Colvin*, 2015 WL 4166472 at *3 (S.D. Ga. July 9, 2015).

[7] This is noted by state agency medical consultants. Doc. 10-7 at 108 (Howard Collier, MD); doc. 10-8 at 25 (Dr. Charles Bailey's findings).

11

not required to give *carte blanche* deference to a conclusory statement from any health professional and thus does not err in affording it little weight. *See Mansfield v. Astrue*, 395 F. App'x 528, 530 (11th Cir.2010) (rejecting treating physician's conclusory opinion that claimant could not perform any gainful employment because no substantial evidence supported it). The remainder of Cody's arguments depend on evidence re-weighing, which this Court cannot do.

## IV. CONCLUSION

Substantial evidence supports the ALJ's decision. Accordingly, this case is **DISMISSED WITH PREJUDICE.**

**ORDER ENTERED** at Augusta, Georgia, this 2nd day of September, 2015.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA